IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

AMERICAN AIRLINES, INC. )
 )
  Plaintiff, )
 )  Civil Action No. 1:20-cv-17 (RDA/WEF)
  v. )
 )
SHAHI WORLD & TRAVELS, LLC, )
*et al.*, )
 )
  Defendants. )

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment (Dkt. 462)[1] and Defendants Dream Fly Inc. and Sanjay Shastri's (collectively, the "Dream Fly Defendants") Motion for Summary Judgment and for Judgment on the Pleadings (Dkt. 527). This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motions, the parties' respective oppositions (Dkt. Nos. 496; 517), and the parties' replies in support of their Motions (Dkt. Nos. 508; 529), it is hereby ORDERED that Plaintiff's Motion for Partial Summary Judgment (Dkt. 462) is DENIED and Defendant's Motion for Summary Judgment and for Judgment on the Pleadings (Dkt. 527) is GRANTED-IN-PART.

---

[1] It appears to the Court that Plaintiff's Motion for Partial Summary Judgment against Defendants Dream Fly, Inc. and Sanjay Shastri was filed twice, once at Dkt. 462 (under seal) and again at Dkt. 468. The Court references it as filed at Dkt. 462.

## I. BACKGROUND

Before providing the relevant factual background, the Court starts by articulating the applicable principles governing the Court's evaluation of the facts at this stage.  The factual background recounts the undisputed facts for the purpose of resolving the parties' cross-motions for summary judgment.  *Courthouse News Serv. v. Hade*, __ F. Supp. 3d __, No. 3:21-cv-460, 2022 WL 4485177, at *2 (E.D. Va. Sep. 27, 2022).  When relevant, the Court includes disputed facts (and notes them as such); however, the disputed facts do not control the disposition.

If a party does not contest a fact or its underlying support, the Court can properly consider those facts.  For instance, the Court treats any facts that are listed in a statement of undisputed facts and not specifically controverted by the opposing party as admitted.  *Hayes v. Sotera Def. Sol's, Inc.*, No. 1:15-cv-1130, 2016 WL 2827515, at *2 (E.D. Va. May 12, 2016).  Similarly, any exhibits referenced in a Motion for Summary Judgment that are not objected to can be properly considered by the Court.  *McCloud v. Rice*, 4:20-cv-4, 2022 WL 18146043, at *3 (E.D. Va. Dec. 21, 2022).

Federal Rule of Civil Procedure 56(c) sets forth the specific ways a party *must* use to establish the undisputed (or disputed) nature of a material fact.  A party must either: (1) cite to "particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), or (2) show that the cited materials "do not establish the absence or presence of a genuine dispute, or that" no "admissible evidence" can be produced to "support the fact[,]" Fed. R. Civ. P. 56(c)(1)(B).  Critically, a proper objection pursuant to Federal Rule of Civil Procedure 56(c)(1)(B) is that the underlying evidence "*cannot* be produced in a form that would be admissible in evidence."  *Id.* (emphasis added).  That means that to prevail on such an objection, the objector must show more than the mere fact that the evidence was not presented in admissible form in support of summary judgment—he must

show that the proponent of such evidence would not be able to establish its admissibility at trial. *Jones v. W. Tidewater Reg'l Jail*, 187 F. Supp. 3d 648, 654 (E.D. Va. 2016).[2]

In the context of summary judgment dispositions, opponents to the motion will try to claim that facts are disputed but do not do so in accordance with the strict requirements of Rule 56(c). But the Rules provide a court in that situation with various options: it can (1) give a party the "opportunity to properly support or address the fact;" (2) "consider the fact undisputed[;]" (3) grant summary judgment if the supporting materials "show the movant is entitled to it; or" (4) issue any other appropriate order. Fed. R. Civ. P. 56(e)(1)-(4).

## A. Undisputed Facts

American Airlines owns valid and enforceable trademark rights in its name ("AMERICAN AIRLINES") and its symbol, known as the "Flight Symbol" logo. Dkt. 462 at 1, ¶ 1; *see also id.*, Exs. 1-4 (trademark registrations).[3]  American has "served the public for nearly a century" and has

---

[2] The Court is somewhat hesitant to apply this approach.  In effect, this appears to shift the burden—which, for virtually all purposes on summary judgment, is on the party seeking judgment—vis-à-vis admissibility, to the *opponent* of the relevant evidence.  But that is the way the Rule is written.  *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact *cannot* be presented in a form that would be admissible in evidence." (emphasis added)).  And courts have consistently applied Rule 56 in this way, in an attempt to effectuate the Rules Committee's 2010 amendments.  *See, e.g.*, *Ridgell v. Astrue*, No. DKC 10-3280, 2012 WL 707008, at *9 (D. Md. Mar. 2, 2012) (stating that an objection that did not argue that the summary judgment proponent *could not* establish admissibility "may not be proper under Rule 56"); *Forward Mag., Inc. v. OverDrive, Inc.*, No. 1:10-cv-1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011) ("Significantly, the objection contemplated by the amended Rule [56] is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be.").  The Court does not see any good reason to depart from that approach.

[3] Plaintiff's Statement of Undisputed Material Facts includes repetitive numbering that makes it difficult for the Court to clearly identify which facts it is referring to.  Accordingly, the Court cites to both the relevant page number and paragraph number for clarity.

"used its Marks continuously for years and has substantial recognition amongst customers." Dkt. 462 at 2, ¶ 1; at 3, ¶ 4.

Defendant Sanjay Shastri is the "registered agent and governor of" Defendant Dream Fly, Inc., which is incorporated and has its headquarters in Washington state. *Id.* at 3, ¶ 1; *see also* Dkt. 461, Ex. 8 (business information for Dream Fly, Inc.). Sanjay is also the "registered agent and governor of non-party LockMyFare Inc.," which is also incorporated and headquartered in Washington state. Dkt. 462 at 3, ¶ 2; *see also* Dkt. 461, Ex. 9 (business information for LockMyFare Inc.). LockMyFare Inc. is accredited by the Airlines Reporting Corporation ("ARC"). Dkt. 462 at 3, ¶ 5; *see also id.*, Ex. 15 (ARC accreditation). When registering with ARC, LockMyFare Inc. agreed to "not use American's marks in any way that would harm American [Airlines] or deceive customers" and to have its "travel agency charges be clear to customers, and listed separately from the fare." Dkt. 462 at 4, ¶ 12; *see* Dkt. 461-2, Ex. 27 (ARC agreement). Defendant Shastri's companies had U.S. addresses and obtained U.S. travel accreditation, but were used by "persons in India to book airline tickets." Dkt. 462 at 15, ¶ 73. Sanjay and his wife, Manisha, are also the directors of LockMyFare Pvt. Ltd., which is an Indian company located at a house Sanjay owns in Delhi, India. *Id.* at 3, ¶ 4; *see also* Dkt. 461, Ex. 13 (Zauba Corp listing); Ex. 14 (no objection certificate indicating Sanjay owns the house in Delhi). Manisha has also registered another company, Air Fly, Inc., that does not operate as a travel agency. Dkt. 527 at 3, ¶ 12.[4]

---

[4] For many of the undisputed facts recited in Defendants' Motion, Plaintiff explicitly noted that it was not disputing those facts, instead "objecting" to those paragraphs as "rely[ing] solely on a self-serving and unsupported declaration and naked attorney argument[,]" characterizing them as "specious[,]" and claiming that the allegations are "irrelevant and/or have not been tested or challenged in discovery." Dkt. 517 at 2, response to ¶ 1; *see also id.*, responses to ¶¶ 4-6, 8-16, 18-20, 28-29, 31-32, 36, 41. That objection to does not create a genuine dispute under the Rules, and so the Court treats any facts that are subject to that objection as undisputed.

As a part of his businesses, Sanjay often uses the internet. Dream Fly, Inc. has a domain name, dreamflyinc.com, which it has used for company email accounts. Dkt. 462 at 3, ¶ 13. LockMyFare Inc. uses the domain name lockmyfare.com for both its website and email address. *Id.* at 3, ¶ 14. Sanjay is also in control of other websites that do not appear to be connected to the travel agencies he owns. He controls the domain name <airline-helpdesk.com>, which was registered in August 2018 to Divine Tour Travel. Dkt. 462 at 4, ¶ 7.[5] Shastri also controls the domain name <faresbook.com>, for which he provided the only online Facebook review.[6] Dkt. 462 at 4, ¶ 8. Shastri also has a GoDaddy account that he, his wife Manisha, and an individual named Raj Aryan used to register multiple travel-related domain names: <lockmyfare.com>; <lowflightfares.com>; <tripofreak.com>; <lockmyfare.net>; <lockmyfare.org>; <lockmyfare.in>; <lockmyfare.info>; <lockmyfare.com>; <lockmyfare.co.in>; <lockmyfare.us>; <airline-helpdesk.com>; <lockmyfares.com>; <lowflightfares.in>; <lowflightfares.net>; <lowflightfares.org>; and <lowflightfares.info>. Dkt. 462 at 4, ¶ 10. Shastri also has at least one other GoDaddy account that registered various other domain names. *Id.* at 4, ¶ 11. Finally, at one

---

[5] The Dream Fly Defendants claim to dispute this fact, listing it in their "Statement of Disputed Facts." Dkt. 496 at 1-2. But none of the facts asserted in Defendant Shastri's Declaration (Dkt. 497)—which is the factual basis for Defendants' claimed dispute—actually contradict Plaintiff's assertion that Sanjay Shastri controlled the domain name <airline-helpdesk.com>. As such, the Court treats the statement as "not specifically controverted by" Defendants, and thus as admitted. *Hayes*, 2016 WL 2827515, at *2; *see also* Dkt. 497 ¶ 8 (Shastri affidavit, stating that his cousin *chose* the domain name and that Shastri "did not interfere with his management of staff email accounts").

[6] Defendants' Statement of Disputed Facts asserts that Shastri "does not believe that he personally provided the review in question[,]" but provides no support for that assertion. Dkt. 496 at 2, ¶ 8. Because that is not a proper way of disputing facts pursuant to Federal Rule of Civil Procedure 56(c)(1), the Court treats the fact as undisputed pursuant to Federal Rule of Civil Procedure 56(e)(2).

point, Sanjay's Google Ads account was shut down by Google for violating Google Ads' policies. *Id.* at 4, ¶ 13; *see* Dkt. 462-8 (email from Google re account shutdown).

In conducting his business, Sanjay worked with other travel agencies. He worked with co-Defendant Rajdeep Singh: Dream Fly, Inc. and non-party LockMyFare Inc. were "in the same strip mall" as Singh's travel agencies, and Rajdeep and Sanjay worked together on marketing for their agencies. Dkt. 462 at 6, ¶¶ 21-22. Similarly, Sanjay worked with co-Defendants Shahi World & Travels, LLC and Big Travel Help, who issued tickets for him. *Id.* at 6, ¶ 23; Dkt. 527 at 3, ¶ 6. Sanjay also worked with non-parties Amit Goel and Dream Travel, eventually applying to make LockMyFare Inc. a subagency of Dream Travel. Dkt. 462 at 7, ¶¶ 26, 28. Throughout 2019, money was exchanged between Dream Travel, LockMyFare Inc. and other agencies that Sanjay owned. *Id.* at 7, ¶¶ 29-30. He also worked with non-party "The Travelcation." *Id.* ¶¶ 33. Specifically, Dream Fly "consolidated" (meaning bought tickets for) The Travelcation "for several months." Dkt. 527 at 5, ¶¶ 28-29.

On some occasions, travel agencies associated with Sanjay charged Miscellaneous Charge Orders ("MCOs"), which are booking fees added on to the actual cost of airfare. For example, the email account "sales@airline-helpdesk.com[,]" which is associated with non-party Divine Tour Travel, attempted to charge (or successfully charged) various MCOs for flights. *See, e.g.*, Dkt. 462-9 (Ex. 29) (attempting to charge MCO of $298); Dkt. 462-10 (Ex. 30) (ticket cost of $400, with a total cost of $574); Dkt. 462-11 at 3 (Ex. 31) ($826.85 MCO).[7]   Non-party LockMyFare

---

[7] The Dream Fly Defendants object to these facts on hearsay grounds. However, they have not shown that the facts *cannot* be presented in an admissible form pursuant to Fed. R. Civ. P. 56(c)(2), instead reciting their hearsay objections without support. Accordingly, these facts are undisputed pursuant to Fed. R. Civ. P. 56(e)(2).

However, the Court does agree with the Dream Fly Defendants that the cited exhibits do not show that consumers *disputed* the credit card charges, which is a fact that Plaintiff claims is

Inc. was also involved in transactions that included MCOs.  *See, e.g.*, Dkt. 462-13 (Ex. 33) (email from one Divine Tour Travel employee to another, including "lockmyfare@gmail.com" as a recipient).[8]

Consumers sometimes complained about Sanjay's travel agencies.  For example, they complained that LockMyFare Inc. "made unauthorized or fraudulent charges."  Dkt. 462 at 13, ¶ 59; *see also* Dkt. 462-46 (Ex. 71) (17 ARC letters to LockMyFare Inc. about customer disputes).  One customer left a Facebook review that "Lockmyfare is in fact a scam."  Dkt. 462 at 13, ¶ 61; *see* Dkt 461-4 at 28-30 (Ex. 74) (Facebook review).[9]  And Google Reviews for LockMyFare Inc. stated that "the company building [doesn't] even exist" and that customers would "get scammed" if they tried to purchase something from that entity.  Dkt. 462 at 13-14, ¶ 63; *see also* Dkt. 461-4 (Ex. 76) (Google Reviews).[10]

---

undisputed.  Dkt. 462 at 5, ¶ 14.  While that may be an inference that can be drawn, for the purpose of considering Plaintiff's Motion for Partial Summary Judgment, the Court must draw any inferences in Defendants' favor.

[8] Plaintiff claims that this exhibit, and three others like it, show that Defendants "charged excessive MCOs through LockMyFare."  Dkt. 462 at 5, ¶ 16.  However, the characterization of these MCOs as "excessive" is not a fact that this Court must consider.  Nor do these documents show that Defendants charged MCOs through LockMyFare Inc.  All these exhibits show is that an employee at Divine Tour Travel charged an MCO when issuing a ticket, and sent information including the MCO to LockMyFare Inc.

[9] Defendants object to this fact on hearsay grounds.  That objection is unavailing for two reasons. First, the statements are not being presented for the truth of the matter asserted (*i.e.* that "Lockmyfare is a scam") but instead to show that customers complained.  Second, as stated *supra* n.7, Defendants have not shown that the facts cannot be presented in an admissible form; accordingly the Court treats this fact as undisputed.

[10] The Court can properly consider these facts as undisputed for the same reasons as explained *supra* n.9.

Customers also complained directly to Plaintiff about charges connected to Sanjay and/or DreamFly, and Plaintiff subsequently investigated those complaints.  For example, in September 2019, customers "complained to American" after they thought they had purchased eleven round-trip tickets for a family vacation.  Dkt. 462 at 14, ¶ 64; *see also* Dkt. 462-49 (Ex. 77) at 4-5 (customer email).[11]  In booking the flight, the customers called a phone number that "was listed on [an] American Airlines website," Ex. 77 at 5, but was not an American Airlines number, Dkt. 462 at 14, ¶ 64.  After buying the tickets, the customers received a confirmation email from co-Defendant ARB Travels USA, were charged $3,181 for three tickets and $3,554.60 in agent fees, but had not received the tickets after three months.  Dkt. 462 at 14, ¶¶ 67-68; Ex. 77 at 5.  American's records showed that the tickets were booked by Defendant Dream Fly, Inc.  Dkt. 462 at 14, ¶ 69; *see* Dkt. 462-50 (Ex. 78) (American booking records).  Similarly, American also received a complaint from a customer who claimed that they received a number—not associated with American—that was claiming to be "Americans recall service and ... a travel agent that handles Americans overflow."  Dkt. 462 at 14-15, ¶¶ 65, 70-71; *see* Dkt. 462-51 at 5-6 (Ex. 79) (email chain regarding call).  The customer provided credit card confirmation to the person on the phone and received $2,000 in charges within "minutes."  Dkt. 462 at 15, ¶ 72.

Finally, the Court must also address the issue of spoliation.  A few times throughout its summary judgment motion and response to the Dream Fly Defendants' motions, Plaintiff claims that Defendant Shastri is responsible for the alleged "destruction of evidence."  *See* Dkt. 462 ¶¶ 40-44 (describing how Defendant Shastri destroyed evidence); Dkt. 517 at 1 (Plaintiff disputing "all of Defendants' allegedly undisputed facts because Mr. Shastri has admitted to destroying

---

[11] The Court can properly consider these facts—and the rest of the facts related to this incident—as undisputed for the same reasons as explained *supra* n.7.

evidence ....").  And it is true that in certain cases, a finding of spoliation of evidence can allow a court on summary judgment to draw an "adverse inference against a party whose intentional conduct causes ... the destruction of evidence." *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004).  But to draw that inference, American has to meet a high bar: it must show that Defendant Shastri "knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction." *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995).  And, American "bears the burden of showing that [Defendant Shastri] had a duty to preserve the allegedly spoiled evidence and that the evidence was intentionally destroyed." *McDonald v. Wal-Mart Stores E., LP*, No. 3:7-cv-425, 2008 WL 153783, at *4 (E.D. Va. Jan. 14, 2008).  American has done nothing more than claim facts about Defendant Shastri's evident destruction of evidence: they have not shown that evidence's relevance to an issue, Defendant's duty to preserve the evidence, or the intentionality in destroying that evidence.  Without more, the Court cannot make an adverse inference in evaluating the Motions at hand.

## B.  Procedural Background

The Court recounts only the procedural background as relevant to the Dream Fly Defendants.  On January 8, 2020, Plaintiff filed its initial Complaint, which named Dream Fly, Inc. as a Defendant.  Dkt. 1.  Plaintiff's corresponding Motion for a Preliminary Injunction against Dream Fly, Inc. (among others), Dkt. 24, was granted on January 23, 2020, Dkt. 39.  Plaintiff filed an Amended Complaint on August 31, 2021, which named both Dream Fly, Inc. and Sanjay Shastri as Defendants.  Dkt. 189.  The Dream Fly Defendants answered the Amended Complaint on November 10, 2021.  Dkt. 201.

After the conclusion of discovery, Plaintiff filed a Motion for Partial Summary Judgment against both Dream Fly, Inc. and Sanjay Shastri on October 4, 2022.  Dkt. 468.  The Dream Fly

Defendants opposed that Motion on November 10, 2022.  Dkt. 496.[12]  Plaintiff replied in support

of its Motion for Partial Summary Judgment on November 16, 2022.  Dkt. 508.  After Magistrate

Judge Fitzpatrick extended the deadline for the Dream Fly Defendants to file their Summary

Judgment Motion to November 23, 2022, Dkt. 524, the Dream Fly Defendants filed their Motion

for Summary Judgment and for Judgment on the Pleadings on the docket on December 12, 2022.

Dkt. 527.[13]  Plaintiff (which had received a copy of the Motions on November 24, 2022) filed its

opposition on December 2, 2022.  Dkt. 517.  Defendants also filed their Reply in Support of their

Motion for Summary Judgment and for Judgment on the Pleadings on December 12, 2022.  Dkt.

529.

## II.  STANDARDS OF REVIEW

### A. Summary Judgment Motions

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the

record shows 'that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law.'"  *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 615 (E.D. Va.

2014) (quoting Fed. R. Civ. P. 56(a)).

"A material fact is one 'that might affect the outcome of the suit under the governing law.'

---

[12] Plaintiff notes that the Dream Fly Defendants filed their response three weeks late.  Dkt. 508 at 1 n.1.  However, as Plaintiff acknowledges, that late response was due in part to the Dream Fly Defendants' counsel experiencing various health issues.  While we are a profession duty-bound to adhere to rules, we acknowledge and respect the challenges we all experience as human beings. Given the late response, the Court had discretion to discount the Dream Fly Defendants' response to Plaintiff's motion.  *Id.*  Because there is a strong preference "that claims and defenses be disposed of on their merits," and considering all of the relevant circumstances, the Court finds it appropriate to consider the Dream Fly Defendants' response. *Colleton Prep. Acad., Inc. v. Hoover Univ., Inc.*, 616 F.3d 413, 417 (4th Cir. 2010).

[13] Early in the morning on November 24, counsel for the Dream Fly Defendants indicated that he could not access ECF and emailed Defendants and the Court copies of the pleadings and exhibits.

A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* at 615-16 (quoting *Spriggs v. Diamond Auto. Glass*, 242 F.3d 179, 183 (4th Cir. 2001)).  The moving party bears the "initial burden to show the absence of a material fact." *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

On summary judgment, a court reviews the evidence in the light most favorable to the non-moving party. *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)).  Here, Plaintiffs and Defendants have each filed cross-motions for summary judgment.  Therefore, the Court considers "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007) (internal quotation marks omitted).  Moreover, in considering the Motion for Summary Judgment filed by Plaintiffs, the facts and all reasonable inferences are accordingly drawn in Defendant's favor.   On the other hand, in considering the motion for summary judgment initiated by Defendants, the facts and all reasonable inferences are accordingly drawn in Plaintiffs' favor. *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015) (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)).  This is a "fundamental principle" that guides the Court as it determines whether a genuine dispute of material fact within the meaning of Rule 56 exists. *Id.* "[A]t the summary judgment stage[,] the [Court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A factual dispute alone is not enough to preclude summary judgment.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson*, 477 U.S. at 247-48.  And a "material fact" is one that might affect the outcome of a party's case.  *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).  The substantive law determines whether a fact is considered "material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).  A "genuine" issue concerning a "material fact" arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor.  *Anderson*, 477 U.S. at 248.

### B. Motion for Judgment on the Pleadings

Rule 12(c) provides that "[a]fter the pleadings are closed ... a party may move for judgment on the pleadings."  The standard of review for Rule 12(c) motions is the same as the "plausibility standard" governing Rule 12(b)(6) motions.  *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014); *Travelers Indem. Co. of Conn. v. Lessard Design, Inc.*, 321 F. Supp. 3d 631, 635 (E.D. Va. 2018).  A motion for judgment on the pleadings challenges a claim's sufficiency; "it does not resolve disputes over factual issues, the merits of a claim, or the applicability of a defense."  *SunTrust Mortg., Inc. v. Simmons First Nat'l Bank*, 861 F. Supp. 2d 733, 735 (E.D. Va. 2012) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  Thus, "judgment should be entered when the pleadings, construing the facts in the light most favorable to the non-moving party, fail to state any cognizable claim for relief[.]"  *O'Ryan v. Dehler Mfg. Co.*, 99 F. Supp. 2d 714, 718 (E.D. Va. 2000).

## III. ANALYSIS

### A. Plaintiff's Motion for Partial Summary Judgment

Plaintiff has moved for summary judgment on three of its claims.  It first argues that there is no genuine dispute of material fact, entitling it to summary judgment on its claim for trademark infringement and counterfeiting (Count I).  Plaintiff also asserts that it is entitled to summary judgment on its common-law and statutory conspiracy claims (Counts VIII and IX).

#### 1. Plaintiff's Trademark Infringement and Counterfeiting Claim

The parties agree on the standard that governs Plaintiff's trademark infringement claim.  To establish that it is entitled to summary judgment, Plaintiff must show that there is no genuine dispute of material fact that it (1) owns a valid, legally protectable mark; and (2) that the Dream Fly Defendants' use of the mark is "likely to cause confusion among customers." *Synergistic Intern., LLC v. Koman*, 470 F.3d 162, 170 (4th Cir. 2006) (cleaned up).  The Dream Fly Defendants concede that the first element is established.  *See* Dkt. 496 at 8 ("AA shows it owns valid, protectable Marks ....").

Neither party addresses the legal standard for Plaintiff's counterfeiting claim, which does have different elements.  To prevail on its counterfeiting claim, Plaintiff must show that there is no genuine dispute of material fact that the Dream Fly Defendants "(1) intentionally used a counterfeit mark in commerce; (2) knowing that mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods, and (4) its use was likely to confuse or deceive." *Match.com, L.L.C. v. Fiesta Catering Intern., Inc.*, No. 1:12-cv-363, 2013 WL 428056, at *6 (E.D. Va. Jan. 31, 2013).

The disposition of both claims turns on whether the Dream Fly Defendants used American's trademark, a counterfeit thereof, or a similar mark.  Quite simply, Plaintiff contends

that the Dream Fly Defendants "used counterfeit American marks to deceive unsuspecting consumers into believing they were purchasing tickets directly from American Airlines." Dkt. 462 at 18.  Conversely, the Dream Fly Defendants argue that Plaintiff has not shown "*any* example or testimony of even a single use of an AA mark by Dream Fly." Dkt. 496 at 8.

American points to six facts in support of its argument.  The Dream Fly Defendants do not appear to dispute any of these facts:

- The fact that, because LockMyFare Inc. is ARC-accredited, it had to agree to "not use American's marks in any way that would harm American [Airlines] or deceive customers" and to have its "travel agency charges be clear to customers, and listed separately from the fare." Dkt. 462 at 4, ¶ 12; Dkt 461-2 (Ex. 27);
- The fact that American received a complaint from customers who believed they had called an American Airlines number, but actually called a number that does not belong to American.  Dkt. 462 at 14, ¶ 64; Dkt 462-49 (Ex. 77);
- The fact that the customers who believed they had called American received a confirmation from "ARB Travels USA" and assumed that entity worked for American Airlines.  Dkt. 462 at 14, ¶¶ 67-68; Ex. 77 at 5;
- The fact that Defendant Dream Fly, Inc. booked the tickets for the customers who received confirmation from "ARB Travels USA." Dkt. 462 at 14, ¶ 69; Dkt. 462-50 (Ex. 78);
- The fact that Defendants charged MCOs.  *E.g.*, Dkt. Nos. 462-9; 462-10; 462-11;[14]
- The fact that Google Ads shut down Sanjay's account for violating its Google Ads policies.  Dkt. 462 at 4, ¶ 13; *see* Dkt. 462-8.

---

[14] Plaintiff also points to the fact that the MCOs were "exorbitant" and that the Dream Fly Defendants "did not inform customers that they were doing business with a travel agency or that they were being charged excess fees."  Dkt. 462 at 18.  But the description of the MCOs as "exorbitant" is not an undisputed fact—it's Plaintiff's own characterization of the MCOs, not factual support.  Moreover, Plaintiff has pointed to no facts in the record supporting its characterization that the Defendants "did not inform customers that they were doing business with a travel agency or that they were being charges excess fees." Dkt. 462 at 18.  Accordingly, the Court does not consider either assertion as an undisputed fact.

Similarly, Plaintiff argues that the fact that "Defendants directly benefited from" the "consumer confusion" supports its trademark infringement claim.  *Id.*  It asserts that the "customers booked tickets through them which cost more than the price of the ticket from the airline."  *Id.* That is not an additional fact—it is just a different way of saying that Defendants charged MCOs, which made the actual cost to the consumer more than the cost of the ticket.

None of those facts entitle Plaintiff to judgment as a matter of law.

The fact that LockMyFare Inc. is accredited by ARC and thus agreed it would not use American's mark in a harmful way is irrelevant to whether Sanjay Shastri and Dream Fly, Inc. used American's mark, a counterfeit mark, or a mark that is similar to American's mark.  First, there is no evidence in the record that the relevant corporate Defendant, Dream Fly, Inc., is ARC-accredited and was subject to the same agreement.  Second, even assuming that is the case, the fact that Sanjay and/or Dream Fly, Inc. agreed not to use American's mark in a harmful way does not show that either Defendant used American's mark (counterfeit or otherwise), let alone in a manner that was likely to confuse or deceive a customer.

American's reliance on a consumer complaint it received are similarly unavailing.  The customers complained because they called a phone number they believed belonged to American Airlines.  Dkt. 462-49 (Ex. 77) at 4-5.  That number didn't belong to American, but it also didn't belong to Sanjay Shastri, Dream Fly, or any of Sanjay's other travel agencies; instead, it belonged to a co-Defendant, ARB Travels USA.  Dkt. 462 at 14, ¶ 64.  ARB Travels USA then sent a confirmation email to those customers.  *Id.* at 14, ¶ 66.  The Dream Fly Defendants' only connection to the consumer complaint is that Dream Fly, Inc. booked the tickets.  *Id.* at 14, ¶ 69; Dkt. 462-50 (Ex. 78) (booking record).  None of those facts indicate that *any* travel agencies who communicated with the complainant customers used American's marks, a counterfeit mark, or a similar mark.  Indeed, Plaintiff does not provide any evidence that any of the communications that the complainant-customers received bore American's marks.  That failure is further compounded by the fact that the Dream Fly Defendants' only involvement was booking the tickets—there is no evidence they communicated with the customers.  Simply put, there is no evidence that the Dream Fly Defendants used American's mark in merely booking these customers' tickets.

The fact that the Dream Fly Defendants charged MCOs is also irrelevant to American's trademark and counterfeit claims. The use of MCOs, in and of itself, does not show that the Dream Fly Defendants used American's marks in any way. Without any facts connecting the MCOs to the Dream Fly Defendants using American's marks, the use of MCOs is simply irrelevant.

Similarly, the fact that Sanjay's Google Ads account was shut down has too tenuous of a connection to American's trademark and counterfeit claims to support summary judgment here. American claims that it is undisputed that the Dream Fly "Defendants and their co-conspirators also improperly used SEO optimization and the American Marks to trick consumers into believing they are doing business directly with the airlines, including American." Dkt. 462 at 18. But the only support that American provides for that assertion is an email from Google to Defendant Shastri that indicates Google Ads shut down his account. Dkt. 462-8 (Ex. 28). There is no information as to *why* Google shut down Defendant Shastri's account, and American's speculation that it was because of his use of "SEO optimization and the American Marks" makes too many inferential leaps that lack factual support.

In its reply, American also cites as support the fact that "Defendants received numerous ARC chargeback letter [sic] for fraudulent conduct." Dkt. 508 at 6 (citing Dkt 462-46 (Ex. 71)). Because Plaintiff did not cite that proposition as factual support for its trademark claim in its initial motion, the Court need not consider it. *See Reynolds v. Pionear, LLC*, No. 3:15-cv-209, 2016 WL 1248866, at *7 n.15 (E.D. Va. Mar. 25, 2016) (declining to consider argument raised for first time in reply brief). In any event, the ARC chargeback letters do not entitle Plaintiff to judgment as a matter of law on its trademark and counterfeit claims. Those letters are nothing more than correspondence from ARC to non-party LockMyFare Inc. that passengers disputed certain charges

it made.  *E.g.* Dkt. 462-46 at 2 (letter that a passenger disputed an $89 charge).  That does not show

that the Dream Fly Defendants used American's marks.

Finally, Plaintiff seems to amalgamate all of the facts that it believes are supportive into a

theory as to how the Dream Fly Defendants used its marks.  It claims:

> Any time Dream Fly or one of Mr. Shastri's other agencies booked an American
> ticket for a customer that (i) believed they were speaking with American, (ii) found
> one of Defendants' websites through a misleading Google Ad, or (iii) were charged
> an exorbitant MCO, they were counterfeiting American's trademarks.

Dkt. 508 at 6.  Putting aside the fact that those characterizations do not necessarily follow from

the facts American has set forth, that theory requires too many inferences—with no factual

support—that the Court cannot draw in Plaintiff's favor.   Because Plaintiff's trademark

infringement and counterfeit claims require it to show that the Defendants used its marks, a

counterfeit mark, or a similar mark, and it has failed to make that showing, it is not entitled to

summary judgment on those claims.

## 2. Plaintiff's Conspiracy Claims

Plaintiff also seeks summary judgment on its conspiracy claims.  It brings both common-

law and statutory conspiracy claims, which have similar elements in Virginia.  "A common law

conspiracy consists of two or more persons combined to accomplish, by some concerted action,

some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means."

*Comm. Bus. Sys., Inc. v. Bellsouth Servs., Inc.*, 249 Va. 39, 48 (1995).  Common-law conspiracy

actions also require a showing that the plaintiff has sustained "damages as a result of an act that is

itself wrongful or tortious."  *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 215 (2014).

In other words, a conspiracy plaintiff must present "proof that [an] underlying tort was

committed."  *Almy v. Gisham*, 273 Va. 68, 80 (2007).  That principle is also reflected in the

Virginia statute prohibiting business conspiracy; to prevail on such a claim, a plaintiff must

establish "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business[;] and (2) resulting damage to [the] plaintiff." *Dunlap*, 287 Va. at 214 (cleaned up).

The Court assumes (without deciding) that the first conspiracy element has been met. However, even if the "agreement" element of Plaintiff's conspiracy claims has been established, Plaintiff is not entitled to summary judgment on those claims because it has not shown that there is no genuine dispute of material fact that it has been damaged as a result of the agreement to which the Dream Fly Defendants were a part.

Much of Plaintiff's damages argument focuses on the experience that *customers* have when they try and book tickets through the Dream Fly Defendants and their associates.  For example, Plaintiff points to evidence that (1) customers have "called one of Defendants' phone numbers believing the number to be an American ... number or affiliated with American[;]" (2) that the call centers associated with the alleged conspirators sometimes add "an undisclosed MCO to the ticket fare[;]" (3) that the purported conspirators "use bogus travel agency websites, business reviews, and social media pages[;]" and (4) that the Dream Fly Defendants' role in the conspiracy is to "submit[] the ticket bookings to a consolidator ... which bills consumers who believe they are doing business with American." Dkt. 462 at 26-28.  Those facts show damage to consumers who are trying to book flights with American, not damage to American itself.  Accordingly, those facts are simply irrelevant to the inquiry into whether American has been damaged by the conspiracy.  *See Bellsouth Servs., Inc.*, 249 Va. at 48 ("The foundation of a civil action of conspiracy is the damage caused by the acts committed in furtherance of the conspiracy.").

The only "damage" that Plaintiff could show it has suffered as a result of the conspiracy is any damage stemming from infringement of its intellectual property.  In other words, Plaintiff

could theoretically prevail if it can show that the underlying "wrongful act or tort[]" supporting its conspiracy claim is any one of its intellectual property claims. *See, e.g.*, *Mician v. Catanzaro*, No. 2:17-cv-548, 2018 WL 2977398, at *6 (E.D. Va. June 13, 2018) (trademark infringement was a valid basis on which to maintain conspiracy claim). To prevail on that theory, Plaintiff must show that the undisputed facts establish that members of the conspiracy committed trademark infringement such that the Dream Fly Defendants can be held liable under a conspiracy theory.

Plaintiff has not made the requisite showing. Plaintiff only appears to try and establish the underlying tort of trademark infringement, but has not presented sufficient facts to prove that underlying tort. The fact that customers called a travel agency's number, believing that number to be associated with American, and then were led "to believe they [were] speaking with [American]" does not necessarily indicate that American's marks were used. Dkt. 462 at 27. It also requires too many inferential leaps to conclude that the mere use of "bogus travel agency websites, business reviews, and social media pages to associate phone numbers with American" establishes use of American's marks. *Id.* Without evidence of a connection between use of an American mark and the purported members of the conspiracy, American cannot establish the underlying wrongful action that serves as the basis for the conspiracy claim, *i.e.*, trademark infringement.[15] *See Tire Eng'g and Dist., LLC, v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 311 (4th Cir. 2012) (lack of proof on underlying tort was sufficient to dismiss conspiracy claim).

---

[15] The closest American comes to making its case is when it points to Pinterest posts linking to websites that offer customers the ability to purchase American flights. *See* Dkt. 461-4 (Exs. 84 and 85) (Pinterest posts). But Plaintiff has offered no evidence linking those underlying posts to the conspiracy or to any particular Defendant. Nor do those posts even show a use of American's marks in a way that would be likely to confuse customers, which Plaintiff must establish to prove its underlying trademark infringement claim. *Koman*, 470 F.3d at 170.

Second, even if Plaintiff had adequately proven the underlying trademark infringement claim, it has not shown that the violation can be attributed to the conspiracy.   A purported conspirator is not liable for any and all illegal actions that are taken by its co-conspirator; there must be a "preconceived plan and unity of design and purpose." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003).  That means that Plaintiff has to show that "two people actually came to an agreement (whether explicit or implicit) regarding the purpose of their actions."  *Schlegel v. Bank of Am., N.A.*, 505 F. Supp. 2d 321, 327 (W.D. Va. 2007).  In this case, Plaintiff has to show that the undisputed facts indicate that the purpose of the conspiracy was to violate American's trademarks.  Instead, all Plaintiff has pointed to is the "connections between [the Dream Fly Defendants] and the other Defendant groups and their mutual reliance on one another and desire to dupe American's customers." Dkt. 508 at 7.  That is not enough to connect the conspiracy to harm that American has suffered.

In sum, because American has not shown that it has suffered damages as a result of the conspiracy to which it claims the Dream Fly Defendants are a part, it is not entitled to summary judgment on either of its conspiracy claims.

## B. The Dream Fly Defendants' Motions for Judgment on the Pleadings and for Summary Judgment

The Dream Fly Defendants bring both a Motion for Judgment on the Pleadings and a Motion for Summary Judgment.  Dkt. 527.  For efficiency, the Court addresses the Dream Fly Defendants' arguments by claim, rather than grouping the arguments by motion.

### 1. American's Fraud Claims

### a. Pleading Fraud under Rule 9(b)

The Dream Fly Defendants first contend that Plaintiff's fraud claims should be dismissed because they have inadequately pleaded fraud.   According to them, Plaintiff has "at least" five

Counts that sound in fraud: (1) Count V, the false advertising claim (pursuant to the Virginia Consumer Protection Act); (2) Count VI, the common law fraud claim; (3) Count VIII, the common law conspiracy claim; (4) Count IX, the statutory conspiracy claim; and (5) Count X, the RICO claim.  Dkt. 527 at 10.  The Dream Fly Defendants believe they are entitled to judgment on the pleadings on each of those claims because Plaintiff has not pleaded fraud with particularity.

While the Dream Fly Defendants contend that they are entitled to relief pursuant to Rule 12(c), what they are really seeking is relief pursuant to Rule 9(b).  Indeed, they explicitly acknowledge that is the case, as they cite Rule 9(b)'s stringent requirements and argue that Counts V, VI, VIII, IX and X are subject to Rule 9(b).  *Id.* at 11-13.  Assuming for these purposes that those counts are "fraud" claims, Plaintiff must "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

It makes a difference what procedural tool the Dream Fly Defendants are using here.  A Rule 12(c) motion can be brought at any time "[a]fter the pleadings are closed[,]" so long as the motion would not delay trial.  But that is not the case for all motions brought under Rule 12; some defenses are waived if they are not brought within a certain time frame.  For example, pursuant to Rule 12(h)(1)(B), Rule 12(b)(2)-(5) motions are waived if not brought by a motion filed within 21 days of being served with operative complaint.  Still, a motion to dismiss for failure to state a claim, (commonly known as a Rule 12(b)(6) motion), can be brought pursuant to the Rule 12(c) timing provisions. Fed. R. Civ. P. 12(h)(2)(B).  Because Plaintiff brings a motion pursuant to Rule 9(b), the timing provisions of Rule 12 are not readily applicable.

Nor does Rule 9 offer any guidance, and it is somewhat unclear whether a motion pursuant to Rule 9(b) is waivable.  On the one hand, such a motion is akin to a motion for failure to state a claim—which challenges the legal sufficiency of allegations—and can be brought at any time like

a Rule 12(c) motion.  Fed. R. Civ. P. 12(h)(2)(B).  Consequently, some courts have held that a Rule 9(b) motion cannot be waived.  *See, e.g.*, *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1073 (8th Cir. 2016) ("Rule 9(b)'s pleading standard is not an affirmative defense that is waived by a defendant's failure to raise it."); *United States ex rel. Schwartz v. Coastal Healthcare Grp., Inc.*, 232 F.3d 902 (table), 2000 WL 1595976, at *4 (10th Cir. Oct. 26, 2000) ("[A] Rule 9(b) deficiency may be resolved by summary judgment ...."); *United States v. FastTrain II Corp.*, No. 12-Civ-21431, 2017 WL 606346, at *4 (S.D. Fl. Feb. 15, 2017) (adopting the position of *Olson*, 831 F.3d at 1073).  On the other hand, many courts have held that motions pursuant to Rule 9(b) are waivable.  *See, e.g.*, *Miller v. Strudwick*, No. GLR-14-2303, 2018 WL 4679730, at *5 (D. Md. Sep. 28, 2018) (considering 9(b) arguments waived when not brought "either contemporaneous with or prior to [the] responsive pleading"); *Alkathi, Inc. v. PrimeOne Ins. Co.*, No. 20-cv-11452, 2022 WL 332767, at *4 (E.D. Mich. Feb. 3, 2022) ("[C]ourts across the country have routinely declined to entertain Rule 9 arguments at the summary judgment stage."); *PSC Indus. Inc. v. Johnson*, No. 3:19-cv-362, 2021 WL 1663574, at *14 n.24 (M.D. Tenn. April 28, 2021) ("[T]he gist of the case law seems to indicate that a 9(b) argument on summary judgment is untimely ....") (collecting cases); *Suttle v. Calk*, No. 19 C 4541, 2020 WL 5439986, at *4 (N.D. Ill. Sep. 9, 2020) ("Defendants do not mention Rule 9(b) and have thereby waived its requirements.").  The Fourth Circuit is silent on the issue.  *Strudwick*, 2018 WL 4689730, at *5.

This Court will adopt the approach of other district courts in this circuit in finding that a Rule 9(b) motion is waivable if not brought by a defendant before (or alongside) a responsive pleading.  This makes sense after considering the purposes of Rule 9(b): (1) to ensure that "the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of[;]" (2) to "protect defendants from frivolous suits[;]" (3) to "eliminate fraud actions

in which all the facts are learned after discovery [;]" and (4) to "protect[] defendants from harm to their goodwill and reputation." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Those underlying concerns are no longer present since Defendants have waited to seek relief under Rule 9(b) until now: they have already formulated their defenses through discovery and did not think the lawsuit to be so "frivolous" or "harm[ful] to their goodwill and reputation" so as to seek to dismiss it initially. Moreover, Rule 9(b) is a "basis for attacking the *pleading*[;]" it is "not an affirmative defense on which Plaintiffs will offer evidence at trial." *Prakash v. Pulsent Corp. Employee Long Term Disability Plan*, No. C-6-8592, 2008 WL 3905445, at *1 (N.D. Cal. Aug. 20, 2008) (emphasis added). Accordingly, the Dream Fly Defendants' failure to raise their 9(b) arguments until now means that they have waived them. *Strudwick*, 2018 WL 4689730, at *5; *In re U Fill'Er-Up, Inc.*, No. CIV 2:95-cv-95, 1996 WL 33676773, at *3 (M.D.N.C. Mar. 1, 1995).

### b. Standing

Once again grouping Counts V, VI, VIII, IX, and X as fraud claims, the Dream Fly Defendants contend that American does not have standing to bring those claims. The crux of their argument is that those claims "rest on allegations that customers were deceived" and are devoid of any allegations that "any fraud was practiced upon AA" or that "any misrepresentation [was] made to AA, relied upon by AA, or that AA was proximately harmed by reliance." Dkt. 527 at 13. In response, Plaintiff argues that it brings those fraud claims on "behalf of itself" and that the Dream Fly Defendants' fraud has harmed American "directly" by damaging its "goodwill and reputation, relationship with customers, and intellectual property, as well as causing American to incur expenses fixing tickets improperly issued by Defendants." Dkt. 517 at 25.

Standing is a threshold constitutional requirement that Plaintiff must satisfy to proceed with its claim.  To have standing, Plaintiff must show that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Plaintiff bears the burden to establish standing, *id.*, and the standing question may be evaluated any point over the course of litigation, *see, e.g.*, *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (observing that the "absence of [subject matter] jurisdiction may be raised at any time during the case, and may be based on the court's review of the evidence").

Plaintiff here points to various types of injuries it claims it has suffered.  Specifically, it claims that Defendants' fraud has damaged (1) Plaintiff's "goodwill and reputation[;]" (2) "relationship with customers[;]" (3) intellectual property; and (4) has caused American to "incur expenses fixing tickets improperly issued by Defendants."  Dkt. 517 at 25.

The Court must first start by clarifying which Counts are properly classified as "fraud" claims.  The Dream Fly Defendants correctly classify Count V (False Advertising pursuant to VCPA § 59.1-200), Count VI (Fraud and Misrepresentation) and Count X (RICO) as "fraud" claims.  Each of those claims necessarily require that Plaintiff plead and prove some form of "misrepresentation or knowing concealment of a material fact made to induce another to act to his detriment[,]" meaning they can be generally classified as "fraud" claims.  *Fraud*, Black's Law Dictionary (11th ed. 2019); *see* Va. St. § 59.1-200(A) (VCPA, prohibiting certain *fraudulent* acts or practices (emphasis added)); *Thompson v. Bacon*, 245 Va. 107, 111 (1993) (describing elements of common-law fraud); *Goodrow v. Friedman & MacFadyen, P.A.*, No. 3:11-cv-20, 2012 WL 6725617, at *9 (E.D. Va. Dec. 27, 2012) (noting that a party engaging in "widespread *fraud*" is subject to RICO liability (emphasis added) (cleaned up)).  However, that is not the case for Counts

VIII and IX, which both allege conspiracy.  While one theory of liability could be conspiracy to commit fraud, *e.g.* Dkt. 189 ¶¶ 162, 167 (conspiracy premised on defrauding customers), that is not all Plaintiff alleges.  It also alleges that the Dream Fly Defendants conspired to "misappropriate American's intellectual property," which would be separate from any allegations of fraud. *Id.* ¶¶ 162, 167.  Because the conspiracy claims are not entirely based on allegations of fraud, the Court cannot include them with the other "fraud" claims when analyzing standing.

Plaintiff's purported injuries that stem from the alleged fraud (as reflected in Counts V, VI and X) are insufficient as a legal matter to establish standing.  In particular, those injuries are not "fairly traceable" to the Dream Fly Defendants' acts, as the gravamen of each of Plaintiff's fraud claims is that they made certain false representations to *consumers*. *See* Dkt. 189 (First Amended Complaint) ¶¶ 140, 149, 162, 167, 174 (fraud counts, alleging harm to consumers).  Any harm to Plaintiff itself is not a direct result of actions the Dream Fly Defendants took; it requires many causal links to jump from the Dream Fly Defendants' alleged fraudulent actions to harm that Plaintiff suffered.  According to Plaintiff, every time the Dream Fly Defendants—who are not associated with American—made certain misrepresentations (or insufficient representations) to consumers, it damaged American's relationship with those customers, as well as their intellectual property, goodwill, and reputation.  But it is not plausible that misrepresentations by a non-American entity resulting in extra charges to customers—which were often fixed *by American*, Dkt. 517 at 25—would damage American's relationships, goodwill, and reputation with those customers. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (when a causal chain to establish standing is not plausible, it fails).  Simply, any purported damage to American is far too attenuated from the Dream Fly Defendants' actions to establish standing as to those fraud claims. *Cf. Advanced Res. Intern., Inc. v. Tri-Star Petroleum Co.*, 4 F.3d 327, 333 (4th Cir. 1993)

(allegations of reputational damages were "far too removed" from alleged actions to establish standing, even under a "relaxed rule" applicable to injunctive relief under the Securities Exchange Act).

More fundamentally, even if Plaintiff's allegations were legally sufficient, it has not alleged sufficient facts to support standing for Counts V, VI, and X. The contentions in the First Amended Complaint repeat conclusory assertions about damages, such as the fact that misdirected calls led to "damage to American Airlines." Dkt. 189 ¶ 100; *see also id.* ¶ 142 (Defendants' actions caused "harm to [American's] valuable goodwill and reputation"); ¶ 165 (similar); ¶ 169 (similar); ¶ 178 (similar). Those allegations, without any specific facts regarding how American's goodwill, reputation, or intellectual property were damaged as a result of the Dream Fly Defendants' misrepresentations to consumers, are insufficient for Plaintiff to establish standing on its fraud claim. *See Wall & Assocs., Inc. v. Better Bus. Bureau of C. Va., Inc.*, 685 F. App'x 277, 279 (4th Cir. 2017) (affirming dismissal on standing grounds when plaintiff did not point to any economic loss "or loss of goodwill and reputation resulting directly from reliance" on Defendants' alleged false representation); *Church Ekklasia Sozo Inc. v. CVS Health Corp.*, No. 3:20-cv-382, 2022 WL 1572732, at *8 (W.D.N.C. Feb. 25, 2022) (failure to allege economic harm and connect any damage to purportedly misleading statements was fatal to Lanham Act claim).

To the extent that the Dream Fly Defendants challenge Plaintiff's conspiracy claims on standing grounds, their arguments are unavailing. As the Court has already noted, Plaintiff's conspiracy claims are premised on more than fraud to consumers; they also are rooted in a theory that the Dream Fly Defendants conspired with others to "misappropriate American's intellectual property." Dkt. 189 ¶ 162; *see id.* ¶ 167 (same). Those alleged damages are certainly a direct injury that gives Plaintiff standing on its conspiracy claim.

26

Accordingly, this Court will GRANT the Dream Fly Defendants' Motion for Judgment on the Pleadings as to Counts V, VI, and X, but will DENY it as to Counts VIII and IX.

### 2. American's Intellectual Property Claims

Next, the Dream Fly Defendants argue that they are entitled to summary judgment and/or judgment on the pleadings on each of Plaintiff's "intellectual property claims." Dkt. 527 at 15-25. That includes Count I (trademark infringement); Count II (cyberpiracy); Count III (unfair competition claim pursuant to 15 U.S.C. § 1125(a)); and Count VII (copyright infringement).

The crux of the Dream Fly Defendants' 12(c) argument is that while American has "general allegations" related to its various intellectual property claims, it does not tie those allegations "to the Dream Fly Defendants specifically." *Id.* at 16. According to the Dream Fly Defendants, the First Amended Complaint's "exclu[sion]" of the Dream Fly Defendants when describing the purported scheme means that its intellectual property claims should be dismissed. *Id.* Plaintiff responds that it has "carefully outlined the specific misconduct that gives rise to its intellectual property-based claims." Dkt. 517 at 30.

As to the Dream Fly Defendants' Motion for Summary Judgment on the IP claims, they advance the same argument for each claim: to wit, contrary to what Plaintiff has alleged, discovery has produced no evidence that they violated the intellectual property laws as set forth in the First Amended Complaint. Plaintiff, of course, disagrees.

While the Dream Fly Defendants group their arguments by Motion (*i.e.* 12(c) arguments or Rule 56 arguments), the Court will address each count separately.

a. Trademark Infringement

i. The Dream Fly Defendants' 12(c) Motion

As set forth above, to adequately plead trademark infringement, Plaintiff must have alleged in the Complaint that that it (1) owns a valid, legally protectable mark; and (2) that the Dream Fly Defendants' use of the mark is "likely to cause confusion among customers." *Koman*, 470 F.3d at 170. Once again, there does not seem to be any dispute that Plaintiff owns valid marks.

The Dream Fly Defendants, however, point to the First Amended Complaint as lacking allegations that they committed trademark infringement. According to them, the "general allegations" are too vague to "amount to ... intellectual property infringement ... by the Dream Fly Defendants themselves." Dkt. 527 at 16. Effectively, this is an argument that Plaintiff has engaged in "group pleading[,]" and by doing so, has not pleaded precisely how the Dream Fly Defendants engaged in trademark infringement. *Cf. Dunn v. Borta*, 369 F.3d 421, 434 (4th Cir. 2004) (explaining the concept of group pleading in the fraud context).

But the fact that Plaintiff has not specifically alleged how the Dream Fly Defendants engaged in trademark infringement is not fatal to its claim here. The First Amended Complaint details a complex scheme, of which the Dream Fly Defendants are allegedly a part. *E.g.* Dkt. 189 ¶¶ 94 (allegation about the Dream Fly Defendants' role). And Plaintiff has alleged how, as a part of that scheme, the members of the conspiracy utilized American's trademarks. *See, e.g.*, *id.* ¶ 81 (including various screenshots of websites using American's trademarks). Because it is "plausible that each defendant was involved in all of the facts as alleged" and American has alleged that all of the "defendants ... participated in a scheme involving the same conduct[,]" namely, using its trademarks in a confusing way, Plaintiff has properly alleged its trademark infringement claim against the Dream Fly Defendants. *Sprint Nextel Corp v. Simple Cell, Inc.*, No. CCB 13-617, 2013

WL 3776933, at *2 (D. Md. July 17, 2013); *see also Navient Sol's*, 2020 WL 1867939, at *7 (group

pleading did not "warrant dismissal" because plaintiff had identified "each specific defendant and

their role in the alleged scheme").

ii. The Dream Fly Defendants' Motion for Summary Judgment

Now that discovery has closed, however, the Dream Fly Defendants simultaneously

advance a second argument: there is no evidence in the record that the Dream Fly Defendants used

an American mark.  Dkt. 527 at 18.  While the Dream Fly Defendants do not cite any record

evidence in support of their argument, they are not required to do so.  Since they do not bear the

burden of proof, they can simply "point out to [this] [C]ourt that there is an absence of evidence

to support [American's] case."  *Haysbert v. Bloomin' Brands, Inc.*, No. 4:20-cv-121, 2022 WL

772946, at *11 (E.D. Va. Feb. 18, 2022) (cleaned up) (quoting *Celotex*, 477 U.S. at 325); *see Cray

Commc's, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393 (4th Cir. 1994) (noting that "the

moving party on a summary judgment motion need not produce evidence, but simply can argue

that there is an absence of evidence by which the nonmovant can prove his case" (cleaned up)).

Faced with that argument, American must show that there are specific facts "showing that there is

a genuine issue of material fact" precluding summary judgment on its trademark infringement

claim.  *Bullard v. Panasonic Corp. of N. Am.*, No. 2:6-cv-528, 2006 WL 3858124, at *3 (E.D. Va.

Dec. 28, 2006).

American has not made such a showing.  Its efforts to oppose the Dream Fly Defendants'

motion is a rehashing of its argument as to why is it entitled to summary judgment on that claim.

While it claims that the same evidence it had offered in support of its own summary judgment

motion "confirm[s] that Defendants (and their co-conspirators) used [American's] exact Marks to

defraud consumers[,]" Dkt. 517 at 17, as the Court has already explained, none of that evidence

29

shows that the Dream Fly Defendants used American's marks or anything similar to those marks. *See* Dkt. 517 at 17-18 (American citing the GTAA Addendum, the fact that the Dream Fly Defendants charged MCOs, and the fact that employees received incentives as support for its contention that the Dream Fly Defendants used its Marks). Whether the Dream Fly Defendants used American's trademark (or a similar mark) is a material fact; however, there is no genuine dispute over that fact, as Plaintiff has offered no evidence that the Dream Fly Defendants actually used one of its marks.[16] Accordingly, the Dream Fly Defendants are entitled to summary judgment on Plaintiff's trademark infringement claim.[17] *See U-Haul Intern., Inc. v. WhenU.com, Inc.*, 279 F. Supp. 2d 723, 727 (E.D. Va. 2003) ("A fundamental prerequisite for claims of trademark infringement ... is proof that the defendant used one of plaintiff's protected marks in commerce." (citing *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 1995))); 15 U.S.C. § 1114(1) (trademark infringement statute, creating liability for those who *use* trademarks, counterfeit marks, or marks similar to trademarks in commerce).

### b. Cybersquatting[18]

#### i. The Dream Fly Defendants' 12(c) Motion

To adequately plead its cybersquatting claim pursuant to 15 U.S.C. § 1125(d), Plaintiff must alleging "(1) that the party using [a] domain name had a bad faith intent to profit from using

---

[16] LockMyFare Inc.'s use of the word "American Airlines" in its URL does not support a trademark infringement claim, and Plaintiff does not allege that is the case. *Nagler v. Garcia*, 370 F. App'x 678, 680 (6th Cir. 2010).

[17] American has also not pointed to, nor presented any evidence to support, a theory of vicarious infringement to hold the Dream Fly Defendants liable. *See Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 165 (4th Cir. 2012) (recognizing that a party can be liable for a third party's trademark infringement "based on the defendant's relationship with a third-party tortfeasor").

[18] Plaintiff brings a claim pursuant to 15 U.S.C. § 1125(d), Dkt. 189 at 36, which is commonly referred to as "cyberpiracy" or "cybersquatting."

the domain name and (2) that the domain name is identical or confusingly similar to, or dilutive of a distinctive and famous mark." *Prudential Ins. Co. of Am. v. PRU.com*, 546 F. Supp. 3d 476, 484 (E.D. Va. 2021) (cleaned up) (quoting *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 434 (4th Cir. 2011)).

In opposing Plaintiff's cybersquatting allegations, the Dream Fly Defendants advance the same arguments that they pointed to in fighting its trademark claims. Namely, they maintain that American's "general allegations" are not sufficiently tied "to the Dream Fly Defendants specifically." Dkt. 527 at 16. Once again, the Court finds that group pleading argument unavailing. The First Amended Complaint detailed how the Defendants registered (and used) various domain names that are similar to American's trademark. *E.g.*, Dkt. 189 ¶ 122. Because the Complaint sets forth the purported scheme, which allegedly used confusing domain names, and specifies how the Dream Fly Defendants were a part of the scheme, they have met the pleading standard of Rule 8. *Simple Cell, Inc.*, 2013 WL 377669933, at *2; *Navient Sol's*, 2020 WL 1867939, at *7.

ii. The Dream Fly Defendants' Summary Judgment Motion

Once again, the Dream Fly Defendants argue in the alternative that the undisputed facts show that they are entitled to summary judgment. The bases for their argument are the same as those for their trademark infringement claim: discovery has revealed no evidence that the Dream Fly Defendants "used a domain name 'identical or confusingly similar to' [American's] mark." Dkt. 527 at 22 (quoting 15 U.S.C. § 1125(d)).

The Court agrees with the Dream Fly Defendants in this regard. While Plaintiff need not offer facts that the "allegedly infringing domain name" is "identical to the registered mark[,]" it still must show that "the 'dominant or salient portions' of the domain name" are "sufficiently

31

similar." *Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995)).   Here, Plaintiff argues that the Dream Fly Defendants have infringed on their "AMERICAN AIRLINES" trademark.   But *none* of the domain names that Defendant Shastri and/or Dream Fly own have *any* portions that are similar to the American trademark, let alone "dominant or salient portions."   *See* Dkt. 462 ¶¶ 7-11 (American's statement of undisputed facts, providing the domain names controlled by Defendant Shastri, such as "lockmyfare.com[,]" "airline-helpdesk.com[,]" and "lowflightfares.info").   American's failure to provide any facts showing that the Dream Fly Defendants used a similar domain name means it has not established a genuine dispute of fact as to a crucial element of the cyberpiracy statute, and summary judgment must be granted for the Dream Fly Defendants.[19]   *See Eagle Forum v. Phyllis Schlafly's Am. Eagles*, 451 F. Supp. 3d 910, 922 (S.D. Ill. 2020) (holding that "psamericaneagles.org" and "psamericaneagles.com" were not confusingly similar to "EAGLE FORUM" mark and granting summary judgment against plaintiff on cyberpiracy claim as a result); *Philbrick v. eNom, Inc.*, 593 F. Supp. 2d 352, 379 (D.N.H. 2009) (holding that the domain name "philbricksports" was not similar to the name "Daniel Philbrick" and granting summary judgment to defendant as a result); *cf. Gen. Steel Domestic Sales, LLC v. Chumley*, 129 F. Supp. 3d 1158, 1187 (D. Colo. 2015)

---

[19] While the Fourth Circuit does not appear to have explicitly held that a Defendant can be held vicariously liable for a cyberpiracy claim, that very well may be the case, as reviewing courts have consistently held that Lanham Act claims (of which cyberpiracy is one) can be pursued through a theory of vicarious liability.   *See Rosetta Stone*, 676 F.3d at 165 ("Vicarious liability in the trademark context is essentially the same as in the tort context: plaintiff seeks to impose liability based on the defendant's relationship with a third-party tortfeasor.").   In any event, Plaintiff has not argued or presented any evidence that the Dream Fly Defendants are vicariously liable for cyberpiracy, meaning that the Court need not address that theory.

("[C]ourts have generally recognized that domain names that consist of a given mark plus a disparaging suffix ... rarely meet the 'confusingly similar' test.").

### c. False Advertising and False Association (15 U.S.C. § 1125(a))

### i. The Dream Fly Defendants' 12(c) Motion

In its First Amended Complaint, American also brought claims pursuant to 15 U.S.C. § 1125(a). Dkt. 189 at 37. While Plaintiff characterizes that as a single claim, 15 U.S.C. § 1125(a) actually provides for two separate ways to establish liability: a "false association" claim[20] and a "false advertising" claim. *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 706 (5th Cir. 2016). A false association claim is brought pursuant to 15 U.S.C. § 1125(a)(1)(A), while a false advertising claim is brought pursuant to 15 U.S.C. § 1125(a)(1)(B).

False association claims and false advertising claims have similar elements. To state a false association claim, American must plead "(1) the Defendants used [its] name or a word in interstate commerce in connection with goods and services; (2) the Defendants' use of [American's] name or a word was likely to cause confusion, mistake, or deception as to the association of the Defendant with the Plaintiff, or the sponsorship, or approval of Defendant's goods and services; and (3) Plaintiff is, or is likely to be, damaged by these acts." *Ullah v. Linkenauger*, No. 20-cv-634, 2020 WL 9459338, at *4 (E.D. Va. Oct. 2, 2020). On the other hand, to state a false advertising claim, Plaintiff must allege:

> (1) the [D]efendant[s] made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the [D]efendant placed the false or misleading statement in interstate commerce; and (5) the [P]laintiff has been or

---

[20] "False association" claims are sometimes also referred to as "false designation of origin" claims. *E.g.*, *Univ. Furniture Intern., Inc. v. Collezione Europe USA, Inc.*, 618 F.3d 417, 438 (4th Cir. 2010).

33

> is likely to be injured as a result of the misrepresentation, either by direct diversion
> of sales or by a lessening of goodwill associated with its products.

*Design Res., Inc., v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015) (cleaned up).

Plaintiff has sufficiently stated its false association claim against the Dream Fly Defendants. Plaintiff alleged various facts about how the Defendants used the "American" name in interstate commerce to try and sell airline tickets. *E.g.*, Dkt. 189 ¶ 81 (allegations with screen captures and domain names containing the American name and/or symbol); *id.* ¶ 83 (allegations that Defendants used "Yelp, Yahoo, and MapQuest listings" to "associate bogus phone numbers with American"). Plaintiff also included allegations that several customers believed the contact information on those websites were associated with American, which certainly indicates that the use of the name "American" was likely to cause confusion. *E.g.*, *id.* ¶¶ 16, 80, 83, 86, 100 (allegations of customer confusion). Finally, Plaintiff sufficiently alleged damage to its "business reputation[,]" *e.g.*, *id.* ¶ 100, 111, 178, which is "precisely the sort[] of commercial interest[] the [Lanham] Act protects[,]" *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 137 (2014). Accordingly, and as stated above, Plaintiff's allegations about the scheme at large, when combined with the allegations about the Dream Fly Defendants' role in that scheme, are sufficient to state a false association claim.

However, Plaintiff has not adequately pleaded a false advertising claim. A false advertising claim is premised on the idea that the Defendants "made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product." *Design Res., Inc.*, 789 F.3d at 501. Here, American does not include any allegations that any of the Defendants put forward a "commercial advertisement about his own or another's product" or that such an advertisement contained a "false or misleading description of fact." *Id.* Indeed, the First Amended Complaint seems to indicate that Plaintiff is only proceeding on a false association

34

theory of liability. *See* Dkt. 189 ¶ 12 ("Defendants' actions, as described above, constitute use of a false designation of origin, or a false representation, which wrongfully and falsely designates the origin of Defendants' services and related commercial activities as *originating from or being approved by American* ...."). Accordingly, Plaintiff cannot proceed on a false advertising theory.

### ii. The Dream Fly Defendants' Summary Judgment Motion

Again, the Dream Fly Defendants argue in the alternative that discovery has entitled them to summary judgment. And their argument is similar to their trademark infringement and cybersquatting arguments: even though American has "alleged [an] elaborate scheme by other Defendants [that] might confuse some consumers, there is no evidence that the Dream Fly Defendants represented themselves as being AA." Dkt. 527 at 22. American's response is also the same: there are, at minimum, genuine disputes of fact precluding summary judgment here. Dkt. 517 at 17.

Defendant Shastri is not entitled to summary judgment on the false association claim. He concedes that non-party LockMyFare—which he founded—used the word "American Airlines" in its URL, Dkt. 527 at 4, ¶ 20, and included "a page for booking tickets on American Airlines flights[,]" *id.* at 22-23.[21] And while he also states that there is no likelihood that the use of American's name was "likely to cause confusion, mistake, or deception as to the association of Defendant with [American]" because American did not find "at least one confused customer who

---

[21] As stated above, Defendant Shastri can be held liable for a false association claim (which is a claim pursuant to the Lanham Act) through vicarious liability. *Supra* n. 19. While he responds that "he did not supervise [the LockMyFare website's] content because it was in English," Dkt. 527 at 22, that is not an undisputed fact. He admits that he founded LockMyFare Inc., *id.* at 2 ¶ 3, and that the agency used lockmyfare.com as its website, *id.* at 3 ¶ 14. He does not provide any evidence that he did not "supervise" the content other than his allegation that he does not speak English—which, on its own, does not establish that he did not supervise or have input into the website, as there are many ways he could have had control even if he does not speak English.

had been misled[,]" *id.* at 23, that is not the standard.  Defendant Shastri must show that it is undisputed that the use of American's name of word was *not likely* to cause confusion; the fact that there is no evidence that it actually *did* cause confusion does not prove that.

However, Dream Fly, Inc. is entitled to summary judgment on the false association claim. American has only offered one fact about Dream Fly, Inc.'s part in the scheme: that it booked tickets that included a large MCO, which a customer booked through a co-Defendant, ARB Travels USA.  Dkt. 462 ¶¶ 66-69.  There are no other facts (disputed or otherwise) about Dream Fly's interaction with consumers; in fact, there are no facts showing that Dream Fly, Inc. "used [American's] name[,]" let alone in a way that was likely to cause customer confusion. *Ullah*, 2020 WL 9459338, at *4.  Accordingly, the Court will grant summary judgment for Dream Fly, Inc. on the false association claim.

### d. Trademark Dilution (15 U.S.C. § 1125(c)(2))

#### i. The Dream Fly Defendants' 12(c) Motion

American also brings a trademark dilution claim.  To state such a claim, American must plead that it (1) owns a famous mark that is distinctive; (2) that the Dream Fly Defendants have used a mark "in commerce that allegedly is diluting the famous mark;" (3) that the similarity between the Defendants' mark and the famous mark "gives rise to an association between the marks;" and (4) "that the association is likely to impair the distinctiveness of the famous mark or likely to harm the reputation of the famous mark." *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 264-65 (4th Cir. 2007).  There are two types of trademark dilution: dilution by blurring and dilution by tarnishment.  Dilution by blurring happens when "the 'association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark.'" *Rosetta Stone*, 676 F.3d at 167 (quoting 15

U.S.C. § 1125(c)(2)(B)).  And dilution by tarnishment happens when the trademark "is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context such that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods."  *Id.* (cleaned up) (quoting *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 489 (5th Cir. 2004)).

For the same reasons as the Court has explained above, Plaintiff adequately pleaded its dilution claim.  American alleged that it (1) owns various marks and (2) that the scheme of which Defendants were a part used some of those marks in commerce.  Moreover, because the scheme apparently used American's exact marks, it is evident that that the use of the mark "gives rise to an association between" the mark that the Defendants used and American's marks.  *See Diane Von Furstenberg Studio v. Snyder*, No. 6-cv-1356, 2007 WL 2688184, at *4 (E.D. Va. Sep. 10, 2007) (recognizing that the use of an exact mark can give rise to a trademark dilution claim).  Finally, Plaintiff has adequately alleged how that association has damaged its reputation.  *E.g.*, Dkt. 189 ¶¶ 100, 111, 178.

However, the Complaint only brings forth allegations sufficient to support a dilution by tarnishment claim.  A blurring claim must include some allegations that the "distinctiveness" of the mark has been impaired; distinctiveness "refers to the ability of the famous mark uniquely to identify a single source and thus maintain its selling power."  *Louis Vuitton*, 507 F.3d at 265. Beyond its conclusory allegation that the Defendants' actions "are likely to continue to dilute the distinctiveness of the American Marks[,]" American offers no facts supporting its assertion that the distinctiveness of its marks has been diminished.  Without more, it cannot go forward on that claim.  *See Prairie Island Indian Comm. v. Radisson Hotels Int'l, Inc.*, No. 20-cv-1234, 2020 WL 7490034, at *4-5 (D. Minn. Dec. 21, 2020) (failure to include allegations that "demonstrate[d] a

likelihood that the distinctiveness of the [Plaintiff's] Marks [would] be impaired" warranted dismissal).

### ii. The Dream Fly Defendants' Summary Judgment Motion

However, once again, the Court finds that undisputed facts indicate that summary judgment is appropriate here.  The Dream Fly Defendants are entitled to summary judgment on the trademark infringement claim because Plaintiff has offered no evidence that they used the mark, which is a critical element of that claim.  *Supra* Section II(D)(3)(a)(ii).  That element is similarly critical here: Plaintiff must show that there is at least a genuine dispute of fact that "the defendant has commenced using a mark in commerce that allegedly is diluting the famous mark." *Louis Vuitton*, 507 F.3d at 265.  Because, as explained *supra*, Plaintiff has offered no evidence that the Dream Fly Defendants used an American mark—or something similar to it—in commerce, it cannot establish an element of its claim, and the Dream Fly Defendants are entitled to judgment as a matter of law.

### d. Copyright Infringement (17 U.S.C. § 101)

### i. The Dream Fly Defendants' 12(c) Motion

Count VII of the First Amended Complaint brings a copyright infringement claim against all Defendants, including Defendants Shastri and Dream Fly, Inc.  To plead such a claim, a Plaintiff must allege facts sufficient to show two elements are met: (1) it "possesses a valid copyright" and (2) the defendant "copied elements of its work that are original and protectable." *Copeland v. Bieber*, 789 F.3d 484, 488 (4th Cir. 2015).  Plaintiff sufficiently alleged the first element, as it pointed to the copyrights that it has registered on several occasions in its Complaint. *E.g.*, Dkt. 189 ¶¶ 75, 85.

As with Plaintiff's other intellectual property claims, the facts it has alleged with regard to the Defendants' widespread scheme is sufficient to state a copyright infringement claim against Defendant Shastri and Dream Fly, Inc.  American provided examples of how websites controlled by the Defendants used direct copies of its copyrighted symbol.  *Id.* at 20-27.  It also alleged how various websites hosted "American Airlines-themed landing pages" or "American Airlines-themed websites."  *Id.* ¶ 82.  Taking the allegations in the light most favorable to American, those factual assertions are sufficient in pleading that the Defendants' scheme—of which the Dream Fly Defendants were a part, as stated *infra*—copied, at the very least, American Airlines' symbol in advertising.

## ii. The Dream Fly Defendants' Summary Judgment Motion

The Dream Fly Defendants again argue that discovery has shown no genuine dispute of material fact.  Specifically, they claim that there "is no evidence of the Dream Fly Defendants copying AA's images, or operating any of the generic or infringing-name URLs which AA lists as the 'Fraudulent Websites.'"  Dkt. 527 at 24-25.  American rehashes its same arguments as to why summary judgment is not warranted on all of its intellectual property claims.

A defendant can be liable for copyright infringement through various theories of liability. Under a direct infringement theory, the defendant's specific conduct "causes in some meaningful way an infringement[,]" of the plaintiff's copyright.  *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004).  However, "[u]nder a theory of contributory infringement, one who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another is liable for the infringement too."  *Id.* (cleaned up).  And, under a vicarious liability theory, a defendant is liable if he "has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities."  *Id.* (cleaned up); *see also Levi*

*v. Twentieth Century Fox Film Corp.*, No. 3:16-cv-129, 2017 WL 1227933, at *10 (E.D. Va. Mar. 31, 2017) (explaining vicarious liability for copyright claims).

Here, Plaintiff has offered no evidence that the Dream Fly Defendants "copied elements of [American's] work that are original and protectable." *Copeland*, 789 F.3d at 488. As a threshold matter, Plaintiff has again offered *no* facts (in either its Motion for Summary Judgment or its response to the Dream Fly Defendants' motion) as to what copyrighted material it has registered, and thus, what copyrighted material the Dream Fly Defendants evidently copied. And so it is difficult for this Court to determine the facts upon which its infringement claim is based. In any event, American has only offered facts that non-party LockMyFare Inc. used symbols, words, or other verbiage associated with American by using a URL with the words "American Airlines" and a page "for booking tickets on American Airlines flights." Dkt. 527 at 4, ¶ 20 and at 22-23. But there are no facts in the record about that how that usage copies American's work, particularly because the specifics regarding American's copyrights have not been provided to the Court. Moreover, there are no specifics about what the webpage associated with Lockmyfare contained: without any evidence about how the material there infringed on American's copyright(s), the Dream Fly Defendants are entitled to judgment as a matter of law.

Nor is there any evidence in the record about how the Dream Fly Defendants could be held liable for contributory copyright infringement. There are disputes about the control the Dream Fly Defendants exerted over other co-Defendants or related entities: for example, the parties appear to dispute whether, and how, Defendant Shastri and Dream Fly, Inc. controlled Travelcation Inc. *See* Dkt. 462 at 8, ¶ 33 (facts about how Travelcation Inc. was a subcontractor). However, there are no facts in the record about how Travelcation Inc.—or any other entity over which there is a dispute as to whether the Dream Fly Defendants had control—copied American's work. Accordingly,

without those facts, the Dream Fly Defendants are entitled to summary judgment on the Copyright Infringement claim.

### 3. American's Conspiracy Claims

### a. The Dream Fly Defendants' 12(c) Motion

### i. Preemption

The Dream Fly Defendants Claim first argue that American's state-law claims are "preempted to the extent they are based on alleged copyright infringement." Dkt. 527 at 15. Specifically, they claim that both of Plaintiff's conspiracy claims are preempted. *Id.*[22] In support, they cite a single case from this district from 1989 where a court dismissed a civil conspiracy claim as preempted by the federal copyright scheme. *Id.* (citing *Hoey v. Dexel Sys. Corp.*, 716 F. Supp. 222, 224 (E.D. Va. 1989)).

Defendants do not explain why the conspiracy claims are preempted, and the Court has no obligation to wade through the relevant law and pleadings to determine whether that is the case. For example, the Fourth Circuit has set forth a "two-part test" for determining whether a claim is preempted by the Copyright Act, which involves "looking at (1) whether the claim falls within the subject matter of copyright and (2) whether the claim protects rights that are equivalent to any of the exclusive rights of a federal copyright." *Shandong*, 682 F.3d at 309. The Dream Fly Defendants do not even cite that test, let alone apply it to the facts and allegations in this case. "Because the [Dream Fly] Defendants [have] failed to develop their argument" as to why the conspiracy claims are preempted by the Copyright Act, "it will not be considered." *Navient Sol's*,

---

[22] The Dream Fly Defendants also argue that the state law fraud and false advertising claims are preempted by the copyright infringement claim. However, because this Court has already explained why it will dismiss those claims on standing grounds, it does not address whether those claims are preempted.

2020 WL 1867939, at *7; *Stewart v. Ross*, Nos. 1:18-cv-1369, 1:16-cv-213, 2020 WL 1907471,

at *19 n.24 (E.D. Va. April 17, 2020) (court did not individually address arguments that were not

"sufficiently develop[ed]").

ii. Failure to State a Claim

The Dream Fly Defendants next argue that American has failed to adequately plead both

of its conspiracy claims.  First, they claim that American has failed to plead the existence of an

agreement between the Dream Fly Defendants and other entities, which is an essential element of

a common law civil conspiracy claim.  Dkt. 527 at 25-26.  Second, they claim that Virginia's

business conspiracy statute has the same pleading requirements as fraud claims, and that Plaintiff's

Complaint is devoid of the requisite specifics, which warrants dismissal.  *Id.* at 27-28.  They also

claim that American has not adequately pleaded damages resulting from the purported conspiracy.

As to Plaintiff's common-law conspiracy claim, it is true, as the Dream Fly Defendants

suggest, that Plaintiff must plead the existence of an agreement.  But contrary to the thrust of the

Dream Fly Defendants' argument, such agreement need not be explicitly made; it is sufficient for

the agreement to be implied.  *See Levine v. Meador*, No. 20-cv-1073, 2022 WL 18912678, at *11

(E.D. Va. Mar. 29, 2022) (recognizing the existence of implied agreements under common-law

conspiracy) *report and recommendation adopted*, 2022 WL 18912217 (E.D. Va. Aug. 18, 2022).

And American alleges an implied agreement: as the Court has already recounted, the Complaint

contains various allegations about the advertising that the various Defendants conducted, *e.g.*, Dkt.

189 at 21-27; the use of American's marks on each Defendants' websites, *id.* ¶ 85; the "travel

agency Defendants[']" role in the scheme by submitting "the ticket bookings to a consolidator[,]

*id.* ¶ 89; and each Defendants' (including the Dream Fly Defendants') role in the alleged scheme,

*id.* ¶¶ 10, 92-99.  Those allegations of "concerted action" are sufficient to "suggest[] an agreement"

42

between the Defendants. *Levine*, 2022 WL 18912678, at *12; *see also Sanford v. Virginia*, No. 3:8-cv-835, 2009 WL 2753179, at *3 (E.D. Va. Aug. 26, 2009) (recognizing that to survive a motion to dismiss, a common-law conspiracy claim must allege *either* "an agreement or concerted action"). Accordingly, Plaintiffs have adequately alleged a common-law conspiracy claim against the Dream Fly Defendants.

The Dream Fly Defendants also cannot prevail on their argument that the business conspiracy claim has been inadequately pleaded. As the Dream Fly Defendants have recognized, the standard for pleading business conspiracy is the same as pleading fraud pursuant to Rule 9(b). Dkt. 527 at 27; *BHR Recovery Cmtys., Inc. v. Top Seek, LLC*, 355 F. Supp. 3d 416, 425 (E.D. Va. 2018) ("Like fraud, a plaintiff must plead business conspiracy with particularity."). This Court already held *supra* that the Dream Fly Defendants' motion pursuant to 9(b) was waived. Because the pleading requirements for statutory business conspiracy are the same as those for fraud, and for the reasons explained *supra*, the Dream Fly Defendants have waived any argument that the business conspiracy claim was not adequately pleaded.

American has also adequately pleaded damages under the business conspiracy statute. While the Dream Fly Defendants claim that its "allegations of intended harm to its reputation make no sense[,]" Dkt. 527 at 28, that is "precisely the sorts of commercial interest[] the [Lanham] Act protects[,]" *Lexmark Intern., Inc.* 572 U.S. at 137. And Lanham Act violations (or, as the parties have referred to them throughout their papers, the "intellectual property claims") serve as the "underlying tort" that is the basis for the conspiracy. As such, Plaintiff has adequately pleaded damages.

Accordingly, the Dream Fly Defendants' 12(c) Motion for Judgment on the Pleadings will be denied as to the conspiracy claims.

b. The Dream Fly Defendants' Summary Judgment Motion

Nonetheless, the Dream Fly Defendants claim that they are entitled to summary judgment on both of American's conspiracy claims.  On both claims, they argue that there is no evidence of an agreement between the members of the conspiracy, pointing to the lack of communications, money transfers, and payment records between the Dream Fly Defendants and other Defendants. Dkt. 527 at 26-27, 29.  American disagrees, citing to various documents it claims establishes that it has "specific evidence that [the Dream Fly] Defendants are working with their co-conspirators and other defendants in this case."  Dkt. 517 at 22.

Recall the elements of conspiracy.  "A common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means."  *Bellsouth Servs., Inc.*, 249 Va. at 48. Similarly, the Virginia conspiracy statute requires that a plaintiff provide civil liability when "[a]ny two or more persons … combine, associate, agree, mutually undertake or concert together for the purpose of willfully and maliciously injuring another in his ... trade [or] business ... by any means whatever …."  *Id.* at 47 (quoting Va. Code. §§ 18.2-499 and -500).

The key conspiracy element at issue here is the "concerted action" element.  The Dream Fly Defendants only argue that they are entitled to summary judgment because of the lack of facts evidencing concerted action, which is an essential element of both common-law and statutory conspiracy.  *See CSX Transp., Inc. v. Norfolk S. R.R. Co.*, __ F. Supp. 3d __, No. 2:18-cv-530, 2023 WL 25344, at *32 (E.D. Va. Jan. 3, 2023) ("Virginia conspiracy claims are subjected to a heightened evidentiary standard, requiring clear and convincing evidence of concerted action for an unlawful purpose." (cleaned up) (citing Virginia case law)).  While there is no direct evidence

of an agreement, there are substantial disputes over circumstantial evidence indicating concerted action.

Those disputes over circumstantial evidence are enough to preclude summary judgment. *See Sines v. Kessler*, No. 3:17-cv-72, 2022 WL 18026336, at *4 (W.D. Va. Dec. 30, 2022) (recognizing that under Virginia law, "circumstantial evidence may be used to establish a conspiracy"). American has pointed to multiple instances of alleged co-conspirators utilizing American's intellectual property—whether trademarks or copyrighted materials—in an effort to procure potential customers' business while charging them an extra fee on top of the plane ticket. *See, e.g.*, Dkt. 517 at 22-23 (citing relevant deposition testimony and documents). To be sure, the Dream Fly Defendants did not make those representations, as the Court has pointed out in dismissing several of the claims made directly against them. But Dream Fly, Inc. was involved with the ultimate process of booking those tickets: it either submitted those ticket bookings to a consolidator or was the actual consolidator. *Id.* at 22-23 (citing relevant deposition testimony and documents); *see also* Dkt. 462 at 14, ¶ 69 (record of Dream Fly, Inc. booking tickets for consumers who had called a number that they had thought was associated with American Airlines). And both Defendant Shastri and Defendant Dream Fly Inc. exchanged money with co-Defendants who had various roles in the alleged scheme. *Id.* at 23-24. Reasonable minds could differ as to whether those facts indicate mere parallel conduct—which would be insufficient to establish a conspiracy—or concerted action—which would establish a conspiracy. Thus, drawing all reasonable inferences in Plaintiff's favor, the Court concludes that there are at least genuine fact issues precluding summary judgment. *See Garrett v. Langley Fed. Credit Union*, 121 F. Supp. 2d 887, 906 (E.D. Va. 2000) ("[A] conspiracy may be established if the conduct of the parties and the inferences to be drawn from such conduct indicate, at least, a 'tacit understanding' to accomplish

the object of the alleged conspiracy."); *America Online, Inc. v. LCGM, Inc.*, 46 F. Supp. 2d 444, 452 (E.D. Va. 1998) (denying summary judgment on civil conspiracy claim when there was a fact dispute over defendants' role in alleged scheme).

There is one more issue the Court must address. Conspiracy is not, in and of itself, a cause of action; rather, it is basis of liability for an unlawful act. The requirement of an unlawful act means that Plaintiff must show that "at least one member of the conspiracy commit[ted] an underlying tort." *Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 825 (E.D. Va. 2013). That means that if the underlying tort is dismissed, there can be no conspiracy claim. *See, e.g. Shirvinski v. United States Coast Guard*, 673 F.3d 308, 321 (4th Cir. 2012) (affirming dismissal of common-law and statutory conspiracy claims when there was no proof of an underlying tort). And, the Court has dismissed most of the "intellectual property" claims against Defendants, which, as explained *supra*, are the claims that serve as the "underlying tort" for purposes of the conspiracy claims. However, that does not doom Plaintiff's conspiracy claims. While the claims against the *Dream Fly Defendants* have been dismissed, that does not necessarily mean an underlying tort was not committed by *other* members of the conspiracy.[23] The Court is not aware of any requirement that, to maintain a conspiracy claim, the underlying tort be committed by the party against whom the plaintiff is alleging a conspiracy. Indeed, such a reading of the conspiracy statute and case law would render both statutory and common-law conspiracy superfluous of any underlying tort. That analysis is confirmed by other courts. *See, e.g.*, *Inova Health Care Servs. for Inova Fairfax Hosp. v. Omni Shoreham Corp.*, No. 20-784, 2020 WL 4201661, at *8 (D.D.C. July 22, 2020) (explaining that the "only purpose of a civil conspiracy claim is to spread liability for a successful tort claim

---

[23] Every other Defendant or Defendant group has settled their claims with Plaintiff, and so there has not been any merits dismissal of intellectual property claims brought against the other Defendants.

to all agreeing parties[,] regardless of whether they actually committed the tortious act" (cleaned up)); *Kerrigan v. Visalus, Inc.*, No. 14-cv-12693, 2016 WL 892804, at *20 (E.D. Mich. Mar. 9, 2016) (noting that a viable conspiracy claim need only plead that one of members of conspiracy committed the "underlying tort"); *see also Harrell*, 923 F. Supp. 2d at 825 ("The unlawful act element requires that *at least one* member of the conspiracy commit an underlying tort." (cleaned up)).  Accordingly, Plaintiff's conspiracy claims can go forward.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff American Airlines' Motion for Partial Summary Judgment (Dkt. 462) is DENIED; and it is

FURTHER ORDERED that Defendants Dream Fly, Inc. and Sanjay Shastri's Motion for Summary Judgment and Motion for Judgment on the Pleadings (Dkt. 527) is GRANTED-IN-PART; and it is

FURTHER ORDERED that Counts V, VI, and X of the First Amended Complaint are DISMISSED pursuant to Rule 12(c) against the Dream Fly Defendants.

The Clerk is directed to enter Judgment pursuant to Federal Rule of Civil Procedure 58 for Defendant Dream Fly Inc. and Defendant Sanjay Shastri as to Counts I, II, and VII.

The parties are directed to contact the Court to schedule a status conference within seven (7) days of this Memorandum Opinion and Order.

IT IS SO ORDERED.

Alexandria, Virginia
June 12, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge